IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHUONG HUYNH,

      Plaintiff,                       No. CIV S-08-1216 KJM

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                <u>ORDER</u>

          /

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated November 30, 2007, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has a severe impairment of depression but this impairment does not meet or medically equal a listed impairment; plaintiff can perform work at all exertional levels but is moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, or to respond appropriately to changes in the work setting; plaintiff has no past relevant work; plaintiff is illiterate; based on the testimony of a vocational expert, there are a significant

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1 number of jobs which plaintiff can perform; and plaintiff is not disabled. Administrative

2 Transcript ("AT") 19-24. Plaintiff contends the ALJ improperly assessed the severity of his

3 impairments, improperly rejected the opinion of an examining psychiatrist, and improperly relied

4 on the testimony of a vocational expert.

5 II. Standard of Review

6 The court reviews the Commissioner's decision to determine whether (1) it is

7 based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

8 record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

9 Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

10 Substantial evidence means more than a mere scintilla of evidence, but less than a

11 preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

12 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a

13 reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

14 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

15 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler,

16 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

17 detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

18 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of

19 supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

20 substantial evidence supports the administrative findings, or if there is conflicting evidence

21 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

22 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

23 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

24 1335, 1338 (9th Cir. 1988).

25 /////

26 /////

III. Analysis

A. Severity of Impairments

Plaintiff contends the ALJ committed error at step two by failing to find that plaintiff's headaches were a severe impairment. An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996).

Plaintiff asserts that because he was diagnosed many times with headaches, his condition should have been found to be a severe impairment. A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make. Moreover, plaintiff's implied assertion that pain associated with headaches should be considered a severe impairment ignores the governing regulations. Pain is a symptom, not an impairment. See 20 C.F.R. § 404.1529 ("[S]ymptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); SSR 95-5p; see also Smolen 80 F.3d at 1281; In re Heckler, 751 F.2d 954, 955 n.1 (8th Cir. 1984) ("pain is a symptom, not an impairment"). Other than the conclusory assertion that a person with headaches occurring on the frequency that plaintiff experienced could not perform sustained work activities, there is no evidentiary support for plaintiff's contention that there are functional limitations attributable to plaintiff's headaches. Nowhere in the record is there support for the assertion that plaintiff's headaches precluded the

performance of work eight hours a day, for five days a week.[2]  See SSR 96-8p (claimant must be able to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, 8 hours a day, for 5 days a week, or an equivalent work schedule). To the extent plaintiff's headaches were associated with depressive symptoms, the ALJ properly determined that plaintiff had a severe impairment of depression and assessed plaintiff's functional limitations in that context.  AT 19, 146-147.  There was no error in the step two analysis.

      B.  Medical Opinions

Plaintiff contends the ALJ failed to set forth the requisite clear and convincing reasons for rejecting the opinion of examining psychiatrist, Dr. Kalman.  AT 204-211. Substantively, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  As plaintiff points out, an ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g.,

---

[2] Although plaintiff is correct that the ALJ mischaracterized the skull x-rays as having no abnormalities, the medical conclusion of the radiographer was that the abnormalities represented a benign process.  AT 126-128A.

5

supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, no treating physician opined as to plaintiff's functional limitations. Plaintiff contends the ALJ improperly rejected the opinion of examining psychiatrist, Dr. Kalman. However, the residual functional capacity finding and the hypotheticals posed to the vocational expert are consistent with the assessment of Dr. Kalman in that Dr. Kalman found plaintiff was not significantly limited in most work functions and specifically noted that a repetitive, simple, entry-level job would not serve as a stressor. AT 20, 208-210, 247-248.

Plaintiff's reliance on the GAF assessed by Dr. Kalman is misplaced. GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. The GAF does not correlate to the severity assessments utilized in Social Security disability determinations.[3] With respect to the GAF of 55 assessed by Dr. Kalman, impairment in

---

[3] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D. They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.

Response: We did not adopt the comment. We did not mention the GAF scale to

6

occupational functioning is only one example of the level of adaptation meriting such a rating. AT 204. There is no indication in the record that Dr. Kalman's GAF assessment was based on an inability to work; the specific ratings of work functions, which were generally found by Dr. Kalman to be not significantly limited, indicates a basis other than impairment of work function for the assessed GAF. AT 208-210.

Dr. Kalman also opined that plaintiff would miss work more than three or four times per month. AT 211. The ALJ properly accorded less weight to Dr. Kalman's opinion and instead accorded greater weight to the opinions of the state agency physician and another consulting examining psychiatrist, Dr. Soliman. AT 22-23, 154-157, 172-175. The ALJ's conclusion that Dr. Kalman's opinion was more consistent with the earlier treatment record is supported by substantial evidence. AT 213, 215-217. Dr. Kalman did not have plaintiff's later records from San Joaquin Mental Health; his record review was limited to mental health records from March 9, 2005 to September 20, 2005. AT 207. Although Dr. Kalman had available for his review a later consultative report from January 2007, the psychologist authoring that report concluded the test results were invalid due to low effort. AT 179. The ALJ properly resolved the conflict among the various record medical opinions and the reasons given by the ALJ for according less weight to the opinion of Dr. Kalman meet the standards set forth above. See AT 22-23.

/////

/////

---

endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

      C.  Vocational Expert Testimony

         Plaintiff challenges the vocational expert's testimony as conflicting with the Dictionary of Occupational Titles.  The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).

         Plaintiff contends the vocational expert's testimony conflicts with the DOT because five of the jobs identified by the vocational expert require a reasoning level of two.  AT 246-248.  Plaintiff asserts that the ALJ's residual functional capacity finding that plaintiff is limited to understanding, carrying out and remembering only simple instructions conflicts with the reasoning level required by the identified jobs.  AT 20.  Under the DOT guidelines, a reasoning level of two entails the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, Scale of General Education Development (GED) Reasoning Development, Level 2.  Because the level two reasoning level requirement of "detailed" is modified by the qualifier "uninvolved," a limitation to being able to perform only simple tasks is not inconsistent with that level.  See Abrew v. Astrue, 303 Fed. Appx. 567, 569-70 (9th Cir. 2008); see also Lara v. Astrue 305 Fed. Appx. 324 (9th Cir. 2008).  Thus, the alleged conflict cited by plaintiff does not exist.  Because there was no conflict between the vocational expert's testimony and the DOT, SSR 00-4p was not violated.  The vocational expert departed from the DOT by reducing the number of jobs available to plaintiff due to

illiteracy.  The estimated erosion in the job base was calculated at the specific request of plaintiff's attorney and the vocational expert provided specific percentages of erosion and numbers of jobs still available to plaintiff.  AT 246-248.  Because testimony on this issue was elicited on the record, the ALJ's failure to inquire about erosion due to illiteracy is harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases).  There was no error in relying on the testimony of the vocational expert.

The ALJ's decision is fully supported by substantial evidence in the record, based on the proper legal standards, and articulates reasons that satisfy the requisite standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED:  September 30, 2009.

_____
U.S. MAGISTRATE JUDGE

006
huynh.ss